## REYNALDO RAMOS *v.* COMMISSIONER OF CORRECTION
## (SC 15840)

Callahan, C. J., and Borden, Berdon, Palmer and Peters, Js.

Argued January 14—officially released March 16, 1999

*G. Douglas Nash,* public defender, with whom, on the brief, was *Donald D. Dakers,* for the appellant (petitioner).

*Susann E. Gill,* senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,* state's attorney, and *Richard F. Jacobson,* supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

PETERS, J. A petitioner seeking appellate review, under General Statutes § 52-470 (b), of a ruling on his or her petition for a writ of habeas corpus ordinarily must obtain certification from the habeas court that he or she is entitled to such review.[1] Upon certification, the petitioner has only twenty days to file an appeal. See Practice Book § 80-1, formerly § 4166C. In the present case, through no fault of the indigent petitioner, the appeal was delayed for almost six months. The issue before us is whether, under the uncontested circumstances of the administrative confusion that caused the inordinate delay, the Appellate Court abused its discretion by dismissing the petitioner's untimely appeal. We

---

[1] General Statutes § 52-470 (b) provides: "No appeal from the judgment rendered in a habeas corpus proceeding brought in order to obtain his release by or in behalf of one who has been convicted of crime may be taken unless the appellant, within ten days after the case is decided, petitions the judge before whom the case was tried or a judge of the Supreme Court or Appellate Court to certify that a question is involved in the decision which ought to be reviewed by the court having jurisdiction and the judge so certifies."

conclude that it did and, accordingly, reverse the judgment of the Appellate Court.

The petitioner, Reynaldo Ramos, was convicted of the crimes of attempted murder in violation of General Statutes §§ 53a-49 and 53a-54a (a),[2] robbery in the first

[2] General Statutes § 53a-49 provides: "(a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

"(b) Conduct shall not be held to constitute a substantial step under subdivision (2) of subsection (a) of this section unless it is strongly corroborative of the actor's criminal purpose. Without negating the sufficiency of other conduct, the following, if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law: (1) Lying in wait, searching for or following the contemplated victim of the crime; (2) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission; (3) reconnoitering the place contemplated for the commission of the crime; (4) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed; (5) possession of materials to be employed in the commission of the crime, which are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances; (6) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances; (7) soliciting an innocent agent to engage in conduct constituting an element of the crime.

"(c) When the actor's conduct would otherwise constitute an attempt under subsection (a) of this section, it shall be a defense that he abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

General Statutes § 53a-54a (a) provides: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided

degree in violation of General Statutes § 53a-134 (a) (2),[3] and carrying a pistol without a permit in violation of General Statutes §§ 29-35 and 29-37 (b).[4] On his direct appeal, the Appellate Court affirmed the judgment of conviction. *State* v. *Ramos*, 36 Conn. App. 831, 661 A.2d 606, cert. denied, 235 Conn. 902, 665 A.2d 905 (1995).

On August 22, 1994, the petitioner filed this petition for a writ of habeas corpus, in which he challenged the validity of his criminal conviction on the ground of the ineffectiveness of his trial counsel and his appellate counsel. On October 29, 1996, after an evidentiary hearing, the habeas court dismissed the petition, but granted the petitioner's request for certification to appeal.

Throughout the proceedings that followed, the petitioner manifested his intent to appeal the dismissal of his petition. The habeas court waived the fees and costs associated with an appeal, but did not appoint appellate counsel. Nothing further transpired until, stirred to action by the petitioner's inquiry, appellate counsel

nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[3] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon . . . ."

[4] General Statutes § 29-35 provides in relevant part: "(a) No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. . . ."

General Statutes § 29-37 (b) provides: "Any person violating any provision of subsection (a) of section 29-35 may be fined not more than one thousand dollars and shall be imprisoned not less than one year nor more than five years, and, in the absence of any mitigating circumstances as determined by the court, one year of the sentence imposed may not be suspended or reduced by the court. The court shall specifically state the mitigating circumstances, or the absence thereof, in writing for the record. Any pistol or revolver found in the possession of any person in violation of any provision of subsection (a) of section 29-35 shall be forfeited."

from the office of the chief public defender inquired into the situation and, on April 30, 1997, filed a late appeal on the petitioner's behalf.

On the same day as the filing of the late appeal, at the suggestion of the Appellate Court, the petitioner's counsel filed a motion to permit a late appeal. The respondent, the commissioner of correction, filed a written objection to the motion on the ground of the petitioner's insufficient showing of good cause. On July 9, 1997, the Appellate Court denied the petitioner's motion.

On September 17, 1997, the Appellate Court, on its own motion, held a hearing for the petitioner "to appear and give reasons, if any, why the appeal should not be dismissed as untimely pursuant to [Practice Book] § 4166C [now § 80-1]."[5] Because of an oversight, no counsel appeared to represent the respondent. Counsel for the petitioner explained, in some detail, the administrative reasons for the inordinate delay.[6] Counsel represented that, after the habeas court's dismissal of the petition, there was confusion about who would represent the petitioner on appeal. In the office of the chief

---

[5] At the time of the hearing, Practice Book § 4166C, now § 80-1, provided: "When in any habeas corpus proceeding it is a condition precedent to an appeal from the judgment that the party desiring to appeal obtain certification that a question is involved in the decision which ought to be reviewed by the appellate court, the petition for such certification shall be made to the judge who tried the case within ten days after the case is decided, and if certification is granted the appeal shall be filed within twenty days from the issuance of the notice of certification, unless an application for waiver of fees, costs and security is filed pursuant to Sec. 4016 [now § 63-6], in which event the appeal shall be filed within twenty days from the decision on the application." As of January, 1999, § 80-1 was amended to allow a petition to be brought to "a judge of the supreme or appellate court," as well as to the judge who tried the case, and to allow for an appeal even where certification has been denied.

[6] At oral argument in this court, the petitioner represented that the oral presentation at the hearing was substantially similar to the written submission for reconsideration or reargument.

public defender, the habeas corpus unit serves as counsel at a habeas trial, while the legal counsel unit provides representation on appeal. Further confusion resulted from possible claims of conflict of interest, because the petitioner, throughout his criminal trial, had been represented by an attorney associated with the office of the public defender.[7]

Following the hearing, the Appellate Court dismissed the appeal. Thereafter, it denied the petitioner's subsequent motion for reconsideration or reargument, in which the petitioner had reiterated the administrative circumstances that had caused the inordinate delay.[8] This court granted the petitioner's request for certification, limited to the following issue: "In the circumstances of this case, did the Appellate Court properly dismiss the petitioner's appeal from the habeas court's denial of his petition on grounds of untimeliness?" *Ramos* v. *Commissioner of Correction*, 243 Conn. 958, 704 A.2d 805 (1997). We conclude that the Appellate Court abused its discretion in dismissing the petitioner's appeal under the unusual circumstances of this case.

I

Our analysis begins with two background observations. One relates to the nature of appeals from dismissal of petitions for habeas corpus under § 52-470 (b). The other relates to the office of the public defender.

As we have held repeatedly, § 52-470 (b) does not impose a jurisdictional constraint on appellate review. See *Seebeck* v. *State*, 246 Conn. 514, 527, 717 A.2d 1161

---

[7] At oral argument in this court, counsel for the petitioner represented that the petitioner had waived any possible conflict of interest. In light of that representation, counsel for the respondent agreed that no issue remained about any such conflict.

[8] No claim has been made that the written motion differed substantially from the oral representations made at the hearing on the motion to dismiss the appeal.

(1998); *James L.* v. *Commissioner of Correction*, 245 Conn. 132, 137, 712 A.2d 947 (1998); *Iovieno* v. *Commissioner of Correction*, 242 Conn. 689, 696–97, 699 A.2d 1003 (1997); *Simms* v. *Warden*, 230 Conn. 608, 614–15, 646 A.2d 126 (1994); see also Practice Book § 80-1.[9] That construction of the statute is rooted in our commitment to the purpose that animates our habeas corpus jurisdiction. "[T]he principal purpose of the writ of habeas corpus is to serve as a bulwark against convictions that violate fundamental fairness." (Internal quotation marks omitted.) *Lozada* v. *Warden*, 223 Conn. 834, 840, 613 A.2d 818 (1992).

The office of the public defender is a well respected and important part of our criminal justice system. The office provides invaluable services to large numbers of indigent individuals who need its assistance to effectuate their state and federal constitutional rights to counsel in criminal proceedings. The present case is not, however, the first instance of difficulties, attributable to the internal processes of the office, that have caused unacceptable delays in the vindication of appellate rights. See *Gaines* v. *Manson*, 194 Conn. 510, 513–14, 521–28, 481 A.2d 1084 (1984).

The issue that we certified for appeal concerns the relationship between the purpose for the time limitation on habeas corpus appeals and the function performed by the public defender's office. If confusion in the office of the public defender causes an inordinate delay in the filing of an appeal for a habeas corpus petitioner, the issue for appellate courts is to determine the appropriate remedy. One remedy would require the petitioner to file a new petition for habeas relief premised on the inadequacy of appellate habeas counsel. That remedy would be inescapable if there were significant factual uncertainties about the specific cause for the delay.

[9] See footnote 5 of this opinion.

Another remedy would be to permit a late appeal. It is a reasonable inference from the per curiam judgment of the Appellate Court that it thought that the petitioner should rely on the former rather than on the latter remedy.

The petitioner has raised two separate subissues about the propriety of the judgment of the Appellate Court dismissing his appeal. First, did the Appellate Court have the authority to dismiss the appeal in the absence of a filing of a motion to dismiss by the respondent? Second, if the court had such authority, did it abuse its discretion in dismissing the appeal?

## II

The petitioner challenges the authority of the Appellate Court to dismiss his appeal in light of the respondent's failure to file a motion to dismiss the late appeal. Recognizing that the respondent filed a timely opposition to the motion to file the late appeal, the petitioner nonetheless asks us to hold that the Appellate Court was powerless to act, on its own motion, without a motion to dismiss from the respondent. We disagree.

The rules of practice vest broad authority in the Appellate Court for the management of its docket. Section 60-2 of the Practice Book provides that "[t]he supervision and control of the proceedings on appeal shall be in the court having appellate jurisdiction from the time the appeal is filed . . . . The court may, on its own motion or upon motion of any party . . . (6) order that a party for good cause shown may file a late appeal . . . unless the court lacks jurisdiction to allow the late filing . . . ." Section 60-3 provides, in addition, that "[i]n the interest of expediting decision, or for other good cause shown, the court in which the appeal is pending may suspend the requirements or provisions of any of these rules in a particular case on motion of

a party or on its own motion and may order proceedings in accordance with its direction."

Although these sections support the authority of the Appellate Court to dismiss a late appeal on its own motion, the petitioner argues that they are superseded by the provisions of Practice Book § 66-8. That section, entitled "Motion to Dismiss," provides that "[a]ny claim that an appeal . . . should be dismissed, whether based on lack of jurisdiction, failure to file papers within the time allowed or other defect, shall be made by a motion to dismiss the appeal . . . . Any such motion must be filed in accordance with Sections 66-2 and 66-3 within ten days after the filing of the appeal or the return day of the writ, or if the ground alleged subsequently occurs, within ten days after it has arisen, provided that a motion based on lack of jurisdiction may be filed at any time. The court may on its own motion order that an appeal be dismissed for lack of jurisdiction." Emphasizing the last sentence, the petitioner claims that the Appellate Court had no authority to dismiss his appeal under the circumstances of this case.

The petitioner's argument founders on both procedural and substantive grounds. Procedurally, the argument fails because it was raised neither before the Appellate Court, nor before this court in the petition for certification. We are not persuaded to make an exception from applicable procedural rules in this case. Substantively, the argument fails because it draws an inappropriate negative inference from the last sentence of Practice Book § 66-8. That sentence merely reflects the uncontested principle, which the Practice Book could not alter, that any court is obligated to dismiss any case for lack of jurisdiction at any time. For nonjurisdictional issues, under Practice Book § 60-3, the court "may suspend the requirements or provisions of

any of these [Practice Book] rules in a particular case . . . on its own motion . . . ."[10]

### III

In the absence of jurisdictional barriers, appellate tribunals must exercise their discretion to determine whether a late appeal should be permitted to be heard. *Kelley* v. *Bonney*, 221 Conn. 549, 559 & n.4, 606 A.2d 693 (1992); see *State* v. *Stead*, 186 Conn. 222, 227–29, 440 A.2d 299 (1982). In the exercise of that discretion, the Appellate Court has adopted a policy that, in other than exceptional cases, the need to address cases that were filed timely outweighs the need to permit appeals that are in fact late. *Nicoll* v. *State*, 38 Conn. App. 333, 335–36, 661 A.2d 101 (1995). Although the petitioner challenges the validity of that policy, we need decide only whether the circumstances of his late appeal are sufficiently exceptional to fall within the Appellate Court's own limiting caveat. We conclude that the exceptional circumstances of this case made it an abuse of discretion to dismiss the petitioner's late appeal.

In combination, three reasons persuade us that the petitioner's late appeal should not have been dismissed. First, the late appeal arises from the dismissal of a petition for habeas corpus in which the habeas court certified that "a question is involved in the decision which ought to be reviewed by the court having jurisdiction . . . ." General Statutes § 52-470 (b). Second, the principle of judicial economy counsels against a new habeas corpus hearing if that hearing is likely to result in the reinstatement of the petitioner's appeal. See *James L.* v. *Commissioner of Correction*, supra, 245 Conn. 147–48. Third, and most significant, the delay in

---

[10] As the respondent aptly observes, any other construction of the relevant rules of practice would undermine the authority of the Appellate Court to decline to permit a late appeal. The late appeal could continue to exist, without time limitation, on the Appellate Court's docket.

the appeal cannot be attributed to the petitioner but arose from specifically identified confusion in the office of the public defender.

Although delays in the filing of appeals by the office of the public defender are understandable, they are not automatically excusable. On the conclusory record then before it, the Appellate Court properly denied the motion to file a late appeal.

At the hearing on the court's motion to dismiss, however, the record was significantly amplified. The petitioner informed the court, in detail, about concerns relating to possible conflicts of interest arising out of his continued representation by the office of the public defender. He also described the confusion engendered in the office of the public defender by the assignment of one group of public defenders to the trial of habeas petitions, and the assignment of another group of public defenders to appeals from the dismissal of habeas petitions. That confusion was exacerbated by the failure of the habeas court to enter an order on the petitioner's request for counsel.[11]

The respondent made no appearance at the hearing on the court's motion and, therefore, rebutted none of the specific representations of fact that were proffered on behalf of the petitioner. The respondent similarly did not contest the representations of fact contained in the petitioner's subsequent motion for reconsideration or reargument, which was based on essentially the same grounds.[12] The Appellate Court, therefore, had no basis for rejecting the accuracy of those representations.

---

[11] We are not persuaded that, in the face of actual notice of the petitioner's case and his desire to appeal, the failure to receive official notice addressed to the office of the public defender contributed materially to the delay in processing the appeal.

[12] In oral argument in this court, the respondent acknowledged the accuracy of the petitioner's representations.

We conclude, therefore, that the petitioner showed good cause for the lateness of his appeal and that the Appellate Court abused its discretion when it dismissed his appeal. We add a note of caution, however. It will be a rare case that does not fall within the broad scope of the discretion conferred upon the Appellate Court. Late appeals from dismissals of petitions for habeas corpus, which require an exercise of discretion, do not lend themselves to a bright line test. It is the obligation of petitioners and their counsel to comply with statutory time requirements. Failure to do so risks the dismissal of otherwise meritorious appeals.

The judgment of the Appellate Court is reversed and the case is remanded to that court for further proceedings according to law.

In this opinion CALLAHAN, C. J., and BORDEN and PALMER, Js., concurred.

BERDON, J., concurring. Although I agree with the majority that the Appellate Court abused its discretion in the present case, I also believe that the majority has diluted the contours of our supervisory duty with its "note of caution," which warns that "[i]t will be a rare case that does not fall within the broad scope of the discretion conferred upon the Appellate Court." Because this note suggests that my colleagues and I differ in the ways that we regard the result that we have reached, I write separately to express my views.

All of our courts—trial, Appellate and Supreme—must above all else ensure that they do justice. At the risk of stating the obvious, the stakes are high in a criminal case. Our judges determine who shall live and who shall die, who shall be stripped of liberty and who shall remain free. Given these life-shattering consequences, the courts must exercise their discretion in a manner that comports with justice, not merely the black

letters of the law. As we put it two decades ago, "[d]iscretion . . . imports something more than leeway in decision-making. See *State* v. *Battle*, 170 Conn. 469, 365 A.2d 1100 [1976]; *State* v. *Gilligan*, 92 Conn. 526, 103 A. 649 [1918]; McCormick, Evidence (2d Ed.) § 190. Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." (Internal quotation marks omitted.) *State* v. *Onofrio*, 179 Conn. 23, 29, 425 A.2d 560 (1979). Accordingly, our duty to review a lower court's exercise of its discretion should not be circumscribed by a self-imposed caution that reversal will be a rarity. Instead, we must be guided by fundamental fairness, the touchstone of which is the concept that justice must be done for everyone who comes before the law.

For these reasons, I am able to join only in the result that the majority has reached in this case.