### YEONG GIL KIM ET AL. *v.* DOMINICK MAGNOTTA ET AL.
### (SC 15995)

Callahan, C. J., and Borden, Norcott, McDonald and Peters, Js.

---

Argued March 23—officially released June 1, 1999

*Edward T. Krumeich,* for the appellants (plaintiffs).

*Stanley S. Zinner,* pro hac vice, with whom was *Howard I. Gemeiner,* for the appellee (named defendant).

*Opinion*

PETERS, J. This certified appeal raises issues that are at the crossroads of the remedial provisions of the Connecticut Unfair Trade Practices Act (CUTPA); General Statutes §§ 42-110b and 42-110g;[1] and the four month limitation period for opening judgments contained both in General Statutes § 52-212a and Practice Book § 17-4.[2] The specific question is whether a trial court, having accepted a jury verdict that a stipulated judgment in a prior action between the parties resulted

---

[1] General Statutes § 42-110b (a) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

General Statutes § 42-110g provides in relevant part: "(a) Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages. . . . The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper. . . ."

[2] General Statutes § 52-212a provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . ."

Practice Book § 17-4, formerly § 326, provides in relevant part: "(a) Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which notice was sent. The parties may waive the provisions of this subsection or otherwise submit to the jurisdiction of the court. . . ."

from a CUTPA violation, but not from fraud,[3] has the authority to set the judgment aside after the expiration of the four month limitation period contained in § 52-212a. We conclude that the trial court has discretion to exercise such authority.

The plaintiffs, Yeong Gil Kim and Hi-Soon Seo Kim, brought this multicount action charging the named defendant, Dominick Magnotta (defendant),[4] with various common-law and statutory violations, including fraud, theft in violation of General Statutes § 52-564[5] and unfair trade practices in violation of CUTPA.[6] The plaintiffs claimed that the defendant had engaged in improper practices both in initially selling them a car wash business in Branford and, when that car wash subsequently turned out to be unprofitable, in negotiating with them about the terms of a stipulated judgment in a prior case. The defendant denied the plaintiffs' claims and asserted affirmative defenses of res judicata and collateral estoppel.[7]

With the consent of the parties, the trial court bifurcated the case to have a jury decide the liability issues and the court decide the remedial issues. The jury returned a verdict in favor of the defendant on the counts of fraud and theft, and in favor of the plaintiffs on the CUTPA count. The merits of that verdict are not

[3] The court found, sua sponte, that the plaintiffs had adduced no probative evidence of duress, accident or mistake.

[4] At trial, the plaintiffs withdrew their cause of action against the defendants Philip Socci and Dominick D'Agostino.

[5] General Statutes § 52-564 provides: "Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages."

[6] Although the plaintiffs' complaint contained other counts as well, these other counts are not before us.

[7] The defendant's affirmative defenses are not before us in this appeal.

before us.[8] The court not only accepted the jury's verdict but found, sua sponte, that the plaintiffs had adduced no evidence of duress, accident or mistake. Although the court awarded the plaintiffs $483,000 as restitution, as well as $80,000 for attorney's fees, the court denied their request to rescind the stipulated judgment in the prior case because the four month period of § 52-212a had expired.

A divided Appellate Court affirmed the judgment. *Kim* v. *Magnotta*, 49 Conn. App. 203, 215, 714 A.2d 38 (1998). Judge Lavery dissented from the majority opinion insofar as it affirmed the denial of the plaintiffs' request for rescission of the stipulated judgment. Id. We granted the plaintiffs' petition for certification to appeal, limited to the following issue: "Under the circumstances of this case, did the Appellate Court properly affirm the judgment of the trial court that it lacked jurisdiction to order rescission of the stipulated agreement between the parties?" *Kim* v. *Magnotta*, 247 Conn. 905, 720 A.2d 514 (1998). We now reverse the judgment of the Appellate Court.

I

## FACTUAL AND PROCEDURAL HISTORY

The jury rendered a verdict in favor of the plaintiffs only on their CUTPA claim. In support of its verdict, the jury reasonably might have found the following facts.

---

[8] The plaintiffs did not challenge the jury's verdict, although they appealed to the Appellate Court from other aspects of the trial court's judgment. The defendant cross appealed challenging the trial court's denial of his motions for a directed verdict and to set aside the jury's verdict. The Appellate Court found no merit in the cross appeal. *Kim* v. *Magnotta*, 49 Conn. App. 203, 211–15, 714 A.2d 38 (1998). We did not certify any question relating to the defendant's cross appeal.

On December 5, 1989, the plaintiffs purchased the Branford Carwash from the defendant.[9] The total purchase price was $903,000, of which the plaintiffs paid $453,000 in cash at the time of the closing. They also executed a promissory note for the remaining $450,000 payable to the defendant over a ten year period. In addition, the plaintiffs were required to give the defendant a security interest in the assets of the car wash and to become the defendant's lessees for twenty-five years with respect to the underlying real property. The purchase agreement, the promissory note, the security interest and the lease were all linked together by provisions for cross default, in which default on any one of the plaintiffs' obligations would become a default on the others.

In the course of the negotiations for the car wash purchase, the defendant, or those speaking on his behalf, made numerous misrepresentations about the profitability of the business. The plaintiffs were unable to test the reliability of these representations because, according to the defendant, he conducted his business on a cash basis and, therefore, could produce no supporting documentation.

Unable to run the car wash profitably, the plaintiffs soon defaulted on their monetary obligations to the defendant. In response, the defendant filed a summary process action to evict them from the car wash and to obtain a judgment on their promissory note.

To settle these claims, the parties agreed both to a stipulated judgment on the promissory note and to other terms outside the four corners of the stipulated judgment. On July 3, 1991, in return for a $30,000 credit against their monetary obligations to the defendant, the

---

[9] Although the named vendor was Raindance, Inc., the parties have treated the defendant as the actual vendor because the defendant owned and controlled Raindance, Inc.

plaintiffs agreed to return to the defendant the Branford car wash and the secured personal property that it contained. The plaintiffs also agreed, on July 8, 1991, to execute a stipulated judgment in favor of the defendant for $436,763.49, the plaintiffs' remaining indebtedness on the promissory note, as well as $294.10 for costs and $11,854.69 for unpaid rent. The written settlement agreement made no reference to the defendant's promise to pay the plaintiffs' attorney's fees or to a letter that the defendant had signed, on July 1, 1991, in which he had promised to transfer a Hamden car wash to the plaintiffs as soon as he had obtained the required approvals of two named banks.

The motion for entry of judgment in accordance with the parties' stipulation was granted on July 29, 1991. The defendant never fully performed the settlement to which he had agreed. The defendant did not pay the plaintiffs' attorney's fees. More importantly, despite a request from the plaintiffs on September 3, 1991, the defendant never transferred the Hamden car wash to them. Instead, on November 15, 1991, the defendant filed a voluntary petition for bankruptcy of the Hamden car wash.

As a result, on December 4, 1992, more than one year after the stipulated judgment had been entered, the plaintiffs brought the present action. After the jury verdict in their favor on the CUTPA claim, they sought relief by way of restitution and rescission, not only for the moneys they had paid the defendant but also for rescission of the stipulated judgment. The trial court granted them monetary relief, but declined to rescind the stipulated judgment because the plaintiffs had not filed a motion to open that judgment within the four month limitation period contained in § 52-212a. We granted certification to examine the merits of the trial court's judgment, which the Appellate Court had affirmed. *Kim* v. *Magnotta,* supra, 49 Conn. App. 215.

## II

## THE CERTIFIED ISSUE

The issue that we certified is as follows: "Under the circumstances of this case, did the Appellate Court properly affirm the judgment of the trial court that it lacked jurisdiction to order rescission of the stipulated agreement between the parties?" *Kim* v. *Magnotta*, supra, 247 Conn. 905. We stated the issue as jurisdictional in its nature.

We have often used jurisdictional terms to describe the four month limitation period for opening judgments that is contained in § 52-212a. Our syllogism has been as follows: (1) a court's jurisdiction over the subject matter cannot be waived; (2) § 52-212a permits waiver of the four month limitation period; (3) accordingly, the four month period does not implicate the court's subject matter jurisdiction; (4) nonetheless, § 52-212a refers to continuing jurisdiction; (5) if the reference to jurisdiction in § 52-212a does not implicate subject matter jurisdiction, it must instead implicate personal jurisdiction; (6) § 52-212a, therefore, must have been intended to relate to personal jurisdiction over the parties. See, e.g., *In re Baby Girl B.*, 224 Conn. 263, 288–91, 618 A.2d 1 (1992); *Van Mecklenburg* v. *Pan American World Airways, Inc.*, 196 Conn. 517, 518, 494 A.2d 549 (1985).

We are now persuaded that it is confusing to describe the four month limitation period in § 52-212a as implicating a court's personal jurisdiction over the parties to a motion to open a judgment, because, under our case law, lack of personal jurisdiction generally means something else. "[T]he Superior Court . . . may exercise jurisdiction over a person only if that person has been properly served with process, has consented to the jurisdiction of the court or has waived any objection

to the court's exercise of personal jurisdiction." (Citations omitted.) *Commissioner of Environmental Protection* v. *Connecticut Building Wrecking Co.*, 227 Conn. 175, 195–96, 629 A.2d 1116 (1993); see Practice Book §§ 10-31 and 10-32. "Because a lack of personal jurisdiction may be waived by the defendant, the rules of practice require the defendant to challenge that jurisdiction by a motion to dismiss." *Standard Tallow Corp.* v. *Jowdy*, 190 Conn. 48, 53, 459 A.2d 503 (1983); see *Knipple* v. *Viking Communications Ltd.*, 236 Conn. 602, 606, 674 A.2d 426 (1996). In this case, the defendant challenged the plaintiffs' claims for relief by filing an answer and affirmative defenses. As a result of his failure to file a motion to dismiss and his unconditional participation in the stipulated judgment, the defendant waived any challenge to the court's exercise of personal jurisdiction. Practice Book § 10-32.

The question is whether the legislature intended § 52-212a to provide a litigant an opportunity to revisit the question of personal jurisdiction. We recognize that one of the statutory exceptions to the four month rule in § 52-212a refers to the trial court's retention of "continuing jurisdiction." Our cases on continuing jurisdiction have not, however, analyzed this statutory language in terms of the criteria for personal jurisdiction that are stated in Practice Book § 10-31 and articulated in *Commissioner of Environmental Protection* v. *Connecticut Building Wrecking Co.*, supra, 227 Conn. 195–96. See, e.g., *In re Baby Girl B.*, supra, 224 Conn. 287–91. It is reasonable to presume that the legislature's purpose in enacting § 52-212a was not to add another factor to the law of personal jurisdiction but, rather, to protect the finality of judgments. It would be unworkable to construe the statute in a manner inconsistent with that legislative purpose. The better construction of the statute is to characterize it as a limitation on the trial court's general authority to grant relief from a judgment, not as

a limitation on its personal jurisdiction over the parties. "When two constructions are possible, courts will adopt the one which makes the [statute] effective and workable, and not one which leads to difficult and possibly bizarre results. . . . We consider the statute as a whole with a view toward reconciling its parts in order to obtain a sensible and rational overall interpretation." (Internal quotation marks omitted.) *Grigerik* v. *Sharpe*, 247 Conn. 293, 307–308, 721 A.2d 526 (1998); *Butler* v. *Hartford Technical Institute, Inc.*, 243 Conn. 454, 462, 704 A.2d 222 (1997); *State* v. *Anonymous*, 237 Conn. 501, 515, 680 A.2d 956 (1996).

In support of our revised construction of § 52-212a, we note that nothing in our relevant case law requires a contrary result. Viewed as a limitation on a trial court's authority to grant relief from a judgment, § 52-212a is analogous to statutory or practice rule limitations on the time to take an appeal to the Appellate Court or this court. To determine whether such provisions impose a subject matter jurisdictional requirement on the right to appeal, we have looked to the apparent intent of the legislature. *Ambroise* v. *William Raveis Real Estate, Inc.*, 226 Conn. 757, 764, 628 A.2d 1303 (1993). With respect to those time limitations that the legislature did not intend to be a limitation on appellate subject matter jurisdiction, we have held that, in meritorious cases, an appellate court has the authority to hear the appeal. See, e.g., *Ramos* v. *Commissioner of Correction*, 248 Conn. 52, 57, 59–60, 727 A.2d 213 (1999); *Banks* v. *Thomas*, 241 Conn. 569, 585–86, 698 A.2d 268 (1997); *Kelley* v. *Bonney*, 221 Conn. 549, 559 and n.4, 606 A.2d 693 (1992). We have never held that a time limitation that is not subject matter jurisdictional somehow devolves into a personal jurisdictional constraint on an appellate court's authority to affirm, modify or reverse a judgment of the trial court.

We observe, finally, that the substantive provisions of § 52-212a are fully enforceable as a limitation on the authority of the trial court to grant relief from a judgment after the passage of four months. Thus construed, § 52-212a operates as a constraint, not on the trial court's jurisdictional authority, but on its substantive authority to adjudicate the merits of the case before it. As Chief Justice Maltbie aptly observed more than sixty years ago, a trial court judgment rendered after the expiration of an applicable statutory time limitation "is not void for want of jurisdiction of the court to render it . . . but . . . unless the party against whom it is rendered consents to its being entered or waives the objection [the judgment] is erroneous." (Citations omitted.) *Dime Savings Bank* v. *Pomeranz*, 123 Conn. 581, 583, 196 A. 634 (1938).

Accordingly, we reframe the issue that we certified to be as follows: "Under the circumstances of this case, did the Appellate Court properly affirm the judgment of the trial court that it lacked *the authority* to order rescission of the stipulated agreement between the parties?" In other words, once the trial court concluded that the plaintiffs had proven a CUTPA violation under § 42-110b, did the Appellate Court properly affirm the trial court's conclusion that, as a matter of law, its remedial authority under § 42-110g of CUTPA was significantly limited by § 52-212a?[10]

### III

### ANALYSIS

The plaintiffs proved that the defendant had engaged in conduct that was, in two respects, an unfair trade

[10] We did not grant certification to review the trial court's alternate statement, in its response to the plaintiffs' motion to reargue and for clarification, that "even if this court could rescind the stipulated judgment, it declines to do so." In his brief in this court, the defendant has not relied on this statement as an alternate ground for judgment in his favor.

practice within the terms of § 42-110b. The trial court instructed the jury about the plaintiffs' claim that the defendant had violated CUTPA both in the original transaction in which the plaintiffs had purchased the Branford car wash and in the subsequent transaction in which they surrendered the Branford car wash, entered into the settlement agreement and agreed to a stipulated judgment against them. The jury answered affirmatively to an interrogatory that did not differentiate between these two aspects of the plaintiffs' CUTPA claim.[11]

Because the plaintiffs suffered an ascertainable loss as the result of the defendant's violation of CUTPA, they were entitled to the remedies described in § 42-110g (a). Section 42-110g permitted them to seek recovery of actual damages, punitive damages and "such equitable relief as [the court] deems necessary or proper." The trial court, relying on *Hinchliffe* v. *American Motors Corp.*, 184 Conn. 607, 618, 440 A.2d 810 (1981), held that the plaintiffs were entitled to seek remedies in restitution and rescission.

In its consideration of the plaintiffs' restitutionary claim, the court made certain factual observations. Having presided over the jury trial, the court was familiar with the record. In addition, the court recognized that the plaintiffs had received no benefit from their short-lived operation of the Branford car wash, and that they had returned the car wash to the defendant in substantially the same condition in which it had been when they had received it from him. It also noted that the plaintiffs, in their efforts to resolve their cash flow problems at the car wash, had taken out a loan of $30,000 secured by their residence.

In light of this record, the court first awarded the plaintiffs the monetary damages that they were seeking

---

[11] The jury also found that the plaintiffs were not entitled to an award of interest.

as part of their restitutionary claim. The court ordered the defendant to pay the plaintiffs $483,000, consisting of: (1) $453,000, the cash payment at the closing; and (2) $30,000 to repay the plaintiffs' bank debt. The court also awarded the plaintiffs $80,000 for attorney's fees. Neither party now challenges the validity of this award.[12]

The court then turned to the plaintiffs' remedial claim for rescission of the stipulation that had been incorporated into the stipulated judgment. Because the plaintiffs had failed to move to open the judgment within the four month period specified in § 52-212a, and because they had not shown that the judgment resulted from fraud, duress or mistake, the court held that their proof of a CUTPA violation did not entitle them to rescission in the form of an order opening the judgment.

In upholding the trial court's denial of rescissionary relief, the majority of the Appellate Court acknowledged that a stipulated judgment, in contrast to a judicial determination of rights, has its roots in the law of contracts as well as the law of judgments. *Kim* v. *Magnotta,* supra, 49 Conn. App. 207–208; *Gillis* v. *Gillis,* 214 Conn. 336, 339–40, 572 A.2d 323 (1990). Rescission as an aspect of restitution is a recognized remedy for breach of contract. See 3 E. Farnsworth, Contracts (2d Ed. 1998) § 12.19, pp. 318–23. "[I]t is a well-established general rule that even a judgment rendered by the court upon the consent of the parties, which is in the nature of a contract to which the court has given its approval, can subsequently be opened [after the four month limitation] . . . if it is shown that the stipulation, and hence the judgment, was obtained by fraud, *in the actual absence of consent,* or because of mutual mistake." (Emphasis in original; internal quotation marks

---

[12] The trial court declined to award punitive damages to the plaintiffs. Its refusal to do so was based, in part, on the jury's decision not to award interest to the plaintiffs.

omitted.) *Connecticut National Bank* v. *Cooper*, 232 Conn. 405, 413–14, 656 A.2d 215 (1995); *Celanese Fiber* v. *Pic Yarns, Inc.*, 184 Conn. 461, 466, 440 A.2d 159 (1981).

The Appellate Court, nonetheless, concluded that the plaintiffs were not entitled to rescission of the stipulated judgment and the underlying stipulation. *Kim* v. *Magnotta*, supra, 49 Conn. App. 209–11. It rejected the plaintiffs' efforts to distinguish other § 52-212a cases on the ground that they had sought relief by procedural avenues other than the customary motion to open the judgment.[13] Id., 209–10. It also rejected the plaintiffs' substantive claim that, having proved two CUTPA violations, they could invoke the exception in § 52-212a for circumstances "otherwise provided by law." Id., 210–11. Judge Lavery, in his dissent, emphasized that § 42-110g confers authority on a trial court to exercise its equitable discretion in order to fashion an appropriate remedy for a CUTPA violation. Id., 221. On the factual record in this case, Judge Lavery concluded that the trial court had abused its discretion by declining to afford rescissionary relief to the plaintiffs. Id., 225–28.

Our task is to determine whether the discretionary equitable authority to provide a remedy for CUTPA violations is an authority "otherwise provided by law" that bypasses the four month constraint contained in § 52-212a. For three reasons, we conclude that it does.

First, imposition of a four month limitation on an otherwise available CUTPA remedy would be inconsistent with the purpose of the legislature to enact a remedial statute. See *Ivey, Barnum & O'Mara* v. *Indian Harbor Properties, Inc.*, 190 Conn. 528, 534–35, 461 A.2d 1369 (1983); *Hinchliffe* v. *American Motors Corp.*,

---

[13] The question that we have certified does not include these procedural claims. We decline, therefore, to address the arguments contained in point one of the plaintiffs' brief.

supra, 184 Conn. 616–17. As we have observed in a related context, where the proceedings are equitable and the statute is remedial in nature, a trial court's refusal to open a judgment must "be consistent with the authority conferred upon that court to modify the terms of the judgment in order to achieve an outcome fairer to the parties than provided by the original judgment in light of conditions as they appear when the motion to open is decided. . . . [E]ither a forfeiture or a windfall should be avoided if possible." (Internal quotation marks omitted.) *Society for Savings* v. *Stramaglia*, 225 Conn. 105, 110, 621 A.2d 1317 (1993).

Second, we are unpersuaded by the defendant's argument that, in the absence of an express reference by CUTPA to § 52-212a, § 42-110g (a) of CUTPA does not qualify as a remedial authority "otherwise provided by law." In prior case law under CUTPA, we have interpreted the statute generously to implement its remedial purposes even without a specific statutory basis for our decision. In *Web Press Services Corp.* v. *New London Motors, Inc.*, 203 Conn. 342, 363, 525 A.2d 57, following remand, 205 Conn. 479, 533 A.2d 1211 (1987), for example, we concluded that "knowledge of falsity, either constructive or actual, need not be proven to establish a violation of CUTPA." In *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo*, 190 Conn. 510, 520, 461 A.2d 938 (1983), we noted that "the liberal construction to which a remedial statute such as CUTPA is entitled" was a persuasive factor in our construction of its coverage to include unfair trade practices engaged in by attorneys. In each case, we were undaunted by the absence of specific statutory language to support our decision. In this case as well, we conclude that, if a plaintiff injured by a CUTPA violation cannot be made whole without judicial reexamination of a stipulated

judgment, denial of such relief would be inconsistent with CUTPA's remedial purpose.[14]

Third, our determination that a CUTPA violation can be the basis for setting aside a stipulated judgment, even after the passage of four months, does not do violence to § 52-212a. Our case law on that statute recognizes that, in some situations, the principle of protection of the finality of judgments must give way to the principle of fairness and equity. Accordingly, § 52-212a does not permit a person who has committed fraud to rely on a stipulated judgment to shelter gains that were acquired improperly. See *Celanese Fiber* v. *Pic Yarns, Inc.*, supra, 184 Conn. 466. It is hard to fathom why a person who has committed an unfair trade practice should be treated differently. In both situations, the injured party was unfairly induced to assent to the stipulated judgment.

We note, finally, that, in construing legislation found in separate statutes, we endeavor to advance the legislature's purpose of creating a consistent, rational and harmonious body of law. See, e.g., *Doe* v. *Doe*, 244 Conn. 403, 428–29, 710 A.2d 1297 (1998); *State* v. *State Employees' Review Board*, 239 Conn. 638, 653–54, 687 A.2d 134 (1997). We are persuaded that our conclusion that CUTPA's remedial provision falls within the "otherwise provided by law" provision of § 52-212a creates a workable basis for reconciling the underlying agenda of each statute.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand it to the trial court with direction to render a judgment rescinding the prior stipulated judgment.

In this opinion the other justices concurred.

---

[14] Our conclusion that § 42-110g reasonably can be reconciled with the provisions of § 52-212a disposes as well of the defendant's argument that the plaintiffs should not have been granted equitable relief where an adequate remedy was available at law.