[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING ON MOTION TO DISMISS
On February 17, 2002, respondent mother filed a pro se motion to reopen the judgment against her in this termination of parental rights case. Petitioner, the Commissioner of the Department of Children and Families, ("DCF"), filed a motion to dismiss and a memorandum of law in support, on March 5, 2002. On March 22, 2002, respondent mother filed a memorandum in opposition to the motion to dismiss. The case was transferred to the Regional Child Protection Session in Middletown on April 25, 2002. The court heard argument on the motion May 28, 2002. For the reasons set forth below, the motion to dismiss is denied.
The following history is relevant to the Court's determination:
Termination of parental rights petitions were filed September 27, 2000 alleging that mother and father's parental rights to their sons Travis and James should be terminated because the children were found in a prior proceeding to have been neglected or uncared for and the parents had failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the ages and needs of the children, they could assume a responsible position in the lives of the children. C.G.S. § 17a-112 (B)(1). Trial on the termination of parental rights petition in this case began on September 24, 2001 before the court (Levin, J.). On September 25, 2001, mother consented to termination of her parental rights to Travis and James.[1]
The court (Levin, J.) thoroughly canvassed mother on her consent to termination and found that she had entered her consent knowingly and voluntarily with a full understanding of the consequences of her actions. Tr. 9/25/01 at p. 5. The court also found that she was represented by competent counsel. Id. During the course of the canvass, mother was advised that by consenting, she was "giving up all legal rights to and responsibilities for [the children] in the future." Id. at p. 2. Termination orders entered, and DCF began adoption efforts. As of the filing of the motion to reopen, adoption was not final. (See C.G.S. § 45a-719).
The motion to reopen was filed outside of the four month period to open judgments established in C.G.S. § 52-212a. The motion to reopen alleges that a threat was made by a DCF worker to induce the mother to enter a consent. In her written motion, mother alleges that she was told that if she continued to contest the termination, the two boys would be moved from the home of her brother and separated. At oral argument on May CT Page 7571 28, 2002, counsel for mother also alleged that DCF had threatened to remove the mother's newborn from her care if she did not consent.
Petitioner argues that mother voluntarily consented to termination and was thoroughly canvassed. Petitioner moves to dismiss the motion to reopen asserting that because the motion was filed outside of the four month time period established in C.G.S. § 52-212a, the court lacks personal jurisdiction to consider the claim that the consent was not voluntarily entered.
General Statutes § 45a-719 specifically governs opening of termination of parental rights judgments. The statute provides:
 The court may grant a motion to open or set aside a judgment terminating parental rights pursuant to section 52-212 or 52-212a or pursuant to common law or may grant a petition for a new trial on the issue of termination of parental rights, provided the court shall consider the best interest of the child, except that no such motion or petition may be granted if a final decree of adoption has been issued prior to the filing of any such motion or petition.
The statute thus provides three ways in which a TPR judgment may be opened: (1) a motion to open pursuant to 52-212 or 52-212a; (2) a common law motion to open; and (3) a petition for a new trial.
Section 52-212a provides
 Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. The continuing jurisdiction conferred on the court in preadoptive proceedings pursuant to subsection (o) of section 17a-112 does not confer continuing jurisdiction on the court for purposes of reopening a judgment terminating parental rights.
See In re Baby Girl B., 224 Conn. 263, 290-91 (1992). Clearly, the motion was filed outside the four month time period, so this avenue for opening the judgment is not available to respondent mother. Further, the motion is neither in substance nor in form a petition for a new trial. The respondent's motion, therefore, survives, if at all, as a common law CT Page 7572 motion to open.
A motion to open even a stipulated judgment may be granted after four months if it was obtained by fraud, duress, accident or mistake. Solomonv. Kaeiser, 22 Conn. App. 424, 427, 577 A.2d 1103 (1990). In view of the nature of the respondent's allegation, the court finds that it has jurisdiction to hear the motion to reopen. In re Jonathan M.,255 Conn. 208, 764 A.2d 739 (2001), also provides authority for the court to consider the motion to reopen as a common law motion to open. In In reJonathan M., our Supreme Court held that "the writ of habeas corpus is not the appropriate vehicle by which [a petitioner] may assert a claim of ineffective assistance of counsel as a means of attacking collaterally the termination judgment." 255 Conn. at 216-1 7. The Court found that there were other alternatives through which a parent may attempt to open a final judgment of termination, including a motion to open the judgment, an assertion of fraud or mistake, or a petition for a new trial. 255 Conn. at 23640. The Supreme Court acknowledged:
 "`It is a well-established general rule that even a judgment rendered by the court . . . can subsequently be opened [after the four month limitation] . . . if it is shown that . . . the judgment, was obtained by fraud[, in the actual absence of consent,] or because of mutual mistake.'" (Internal quotation marks omitted) (quoting Celanes Fiber v. Pic Yarns, Inc., 184 Conn. 461, 466, 440 A.2d 159 (1981)).
255 Conn. at 238. In re Jonathan M. thus supports the conclusion that a parent may move to reopen outside the four month limitation if the motion is based on an assertion of fraud or mistake. The court stated: "When a judgment of termination is predicated on fraud or mutual mistake and the indigent's appointed counsel fails to address these issues, presumably rendering the assistance ineffective, the parent may have a remedy to open the judgment at common law." Id. at 238-39.
Moreover, as the Connecticut Supreme Court stated in Kim v. Magnotta,249 Conn. 94, 109, 733 A.2d 809 (1999), "our case law on that statute [C.G.S. 52-212a] recognizes that, in some situations, the principle of protecting the finality of judgments must give way to the principle of fairness and equity." In termination of parental rights cases, finality of judgments is paramount to the ability of the child to be adopted and to achieve permanency in his life. "It is undisputed that children require secure, stable, long-term, continuous relationships with their parents or foster parents." In re Jonathan M., 255 Conn. at 233 (quotingLehman v. Lycoming County Children's Services Agency, 458 U.S. 502, 513
(1982)). Here, the allegation in the motion is that threats were made by CT Page 7573 a DCF social worker to induce the respondent to enter into a consent. Construing the respondent's motion broadly, Beaudoin v. Town Oil Co.,207 Conn. 575, 588 (1988), duress and undue influence are sufficiently alleged. The specific nature of the alleged threats, i.e. that if respondent mother did not enter a consent, DCF would remove her sons from the care of her brother and put them in separate placements and further, that DCF would remove her newborn from her care, makes it even more compelling that the court reach the merits of the claim.
Petitioner cites In re Charles R., 1993 WL 7528 (Conn. Sup — Juv. Matters) (1993) in support of its motion to dismiss. In In reCharles R., a biological mother whose parental rights had been terminated based upon her consent filed a petition for a writ of habeas corpus approximately seven months later alleging that her consent was not voluntarily given because of undue influence by a DCYS worker who pressured her to consent. The court, (Goldstein, J.), reached the merits of the petition and found that there was no undue influence to enter a consent to termination of parental rights. The court stated: "[d]iscussion by social workers, therapists, or attorney with the mother reviewing factors which might tend to favor consent is not necessarily undue influence." Thus, while In re Charles R., may lend support to petitioner's position with regard to the underlying merits of the motion to reopen,[2] it does not support petitioner's motion to dismiss for lack of jurisdiction. The case involved a petition for a writ of habeas corpus, not a motion to reopen, and the court there reached the merits of the claim.
Petitioner argues that the best interest of the two children in this case necessitates dismissal of the motion to reopen filed outside the four month limitation. Respondent argues to the contrary that the best interest analysis mandates that the court hear the motion on its merits because if the consent was not given voluntarily it could not possibly be in the best interest of the children to terminate parental rights on the ground of consent. Section 45-719 permits the court to reopen or set aside a judgment terminating parental rights pursuant to common law, "provided the court shall consider the best interest of the child."[3]
Although under the statute, the best interest analysis would appear to be relevant to a determination on the merits of the motion to reopen, consistent with In re Jonathan M., the court also considers the best interest of the children at this jurisdictional stage.
In In re Jonathan M., the court considered that permitting a parent whose parental rights had been terminated to file a petition for a writ of habeas corpus would affect negatively the best interest of the child and the state's interest as parens patriae. 255 Conn. at 232, 233. The court stated: CT Page 7574
 Thus, we agree that `the state has a vital interest in expediting the termination proceedings' and that permitting the writ of habeas corpus as a means of raising claims of ineffective assistance of counsel and attacking the judgment would undermine that interest. In re Alexander V., supra, 223 Conn. 565
(delaying termination proceedings for parental competency hearings undermines state's interest in protecting welfare of children); see also Lassiter v. Dept. of Social Services, supra, 452 U.S. 27 ("[s]ince the State has an urgent interest in the welfare of the child, it shares the parent's interest in an accurate and just decision.").
Id. at 233. In In re Jonathan M., the Connecticut Supreme Court also recognized that C.G.S. § 45a-719 limits the available options for raising an ineffective assistance of counsel claim "by precluding the court from granting any motion or petition filed after a final decree of adoption has been entered." 255 Conn. at 240. In this case, no final decree of adoption has entered.
On balance, the best interest analysis supports the court's determination in this case to hear the motion to reopen and to deny the motion to dismiss where no final decree of adoption has entered. The court considers that Travis is now 8 years old and James is now 5. The nature of their relationship with their caretaker is very strong. They are currently in the care of a relative who seeks to adopt them. Psychologically, these children (like all children) need permanency of placement. DCF did not suggest that any other factors related to the well being of the children should foreclose the court's consideration of the motion to reopen. Parental rights were terminated last fall and efforts begun to effectuate adoption. Despite the critical importance of permanence to these children, as counsel for mother argues, a judgment based on an involuntary consent would not be in the children's best interest. If the consent was, as alleged, the product of undue influence and duress, there would be no actual consent to termination and it would not be in the children's best interest to have their biological mother's parental rights terminated based on consent.
Thus, the court determines that it has jurisdiction to consider the motion to reopen and that in view of the nature of the allegations, it would be in the best interest of the children to consider mother's claim. Because mother alleges that the termination judgment was the product of undue influence and duress, the motion to dismiss is denied. The parties shall appear for a hearing on the motion to reopen on July CT Page 7575 16, 2002.
It is so ordered this 13th day of June, 2002.
 ___________________ Jongbloed, J.