[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The issue before this court is allocation of the arrearage between the State of Connecticut and the plaintiff mother. The history of this case is not complicated.
The parties have two minor children: Joshua McBride, born October 2, 1991 and Desiree McBride, born July 26, 1990. An acknowledgment of paternity, together with affirmations, advisement of rights and waivers were filed with this court on December 6, 1991 in conformity with General Statutes §46b-172. Thereafter, the State filed a show cause application seeking a support order for the children. Both named parties filed appearances and were present in court for the hearing on July 13, 1992.
The court, Keller, F.S.M., granted the petition and ordered the defendant father to pay support in the amount of $67.50 for each child, totaling $135.00 per week plus $10.00 per week, on the arrearage, found to be $3,390.00 to the State as of July 31, 1992. Immediate income withholding was ordered. The support order has not since been modified.
The defendant attempted to file several motions to modify (file documents 103, 104 and 107) commencing in August, 1998. Various problems relating to service and notice delayed hearing on the motion request until September 3, 1999. By this time a contempt citation had been filed by the support enforcement division which alleged that the defendant was some $51,267.40 delinquent in his support payments.
The defendant based his modification request on a significant period of incarceration following a criminal conviction. He also claimed that he was unable to obtain employment at the level of his previous work. The court, after full hearing, determined that the detrimental change of circumstances relied by the defendant were due to his own volitional acts and hence self-imposed.Crouse v. Crouse, 21 Conn.L.Rptr. 390 (Solomon, J., 1998);Charette v. Charette, 19 Conn.L.Rptr. 187, 3 Conn.Ops. 579 (Zarella, J., April 30, 1997); Deal v. Deal, Superior Court, Judicial District of Middlesex at Middletown, doc. no. 73317 (Gordon, J., Jan. 2, 1996); O'Connell v. O'Connell, Superior Court, judicial district of New Haven at New Haven, doc. no. FA81-0192265 (Axelrod, J., May 14, 1992); Carrero v. Gonzalez,
11 S.M.D. 177 (1997); Scapin v. Scapin, 11 S.M.D. 171,20 Conn.L.Rptr. 348, 3 Conn.Ops. 1039 (1997); Moore v. Moore, 10 S.M.D. 197 (1996); Fleming v. Raiford, 10 S.M.D. 80 (1996). CT Page 695
Accordingly, the motions to modify were denied.
During the course of this hearing, the court observed that the last arrearage finding had been in 1992 when the order was established. In view of the pending contempt citation claiming a mid-five-figure arrearage, the court ordered an audit of the account from the 1992 finding, together with documentation of the public assistance paid over the course of the case.
In response to the audit the Department of Social Services submitted a packet of documents under the rubric "statement of assistance" (State's Exhibit B). The second page of the document provides a one-page form filled in by hand. It indicates a total public assistance payment "from 8/1/89 to 9/30/99" of $53,660.54. A total credit of $962.60 is shown for the same period. Attached are seven pages of computer print-out which purport to provide detail of cash assistance paid pursuant to the Temporary Family Assistance (TFA) program and its predecessor, Aid to Families with Dependent Children (AFDC).
The Support Enforcement Division submitted a more concise computation. On a single page, the audit purports to show all charges on the account broken down by calendar year and allocated to the State's column when the family was on public assistance and to the plaintiff's column when they were not. Payments and credits were likewise accounted. The second page details all payments made by the defendant. The audit indicated an arrearage of $47,112.40 to the State and $5,051.94 to the plaintiff as of September 9, 1999. Upon review of the documents this court found an arrearage of $46,437.40 to the State and $6,469.84 to the plaintiff as of October 22, 1999, subject to correction after scrutiny of the records.
After careful review of the records and exhibits, the court concludes that further adjustment of the arrearage is necessary. Courts have allocated support arrearage accruing during the time of actual public assistance is awarded to the State, with all other arrearage accruing to the support recipient. This methodology was utilized by the court in allocating arrearages inFear v. Fear, 12 S.M.D. 64 (1998); Correa v. Rosa, 10 S.M.D. 73, 76-77 (1996); Carniero v. Brevetti, 10 S.M.D. 65 (1996) (State failed to provide evidence of the amount of AFDC paid); Alicea v.Villafane, 10 S.M.D. 40 (1996) and McCulloch v. McCulloch, 6 S.M.D. 120 (1992). This is consistent with present Federal statutes and regulations. In 1996, the Personal Responsibility CT Page 696 and Work Opportunity Reconciliation Act (PRWORA), P.L. 104-193 and the Balanced Budget Act of 1997, P.L. 105-33 revised the Social Security Act to provide that ultimately support arrearages pursuant to an assignment of support are to be allocated and distributed in this manner. 42 U.S.C. § 408(a)(3); 42 U.S.C. § 457(a)(6). See also 45 C.F.R. § 302.32(f)(ii);45 C.F.R. § 302.51(a)(1). Section 17-578(b)-2(b) of the Regulations of Connecticut State Agencies provides that on discontinuance of public assistance "current support payments shall be distributed to the custodial relative of record on the date of discontinuance, for the benefit of the children named in the child support order."[1]
In the present case the statement of assistance submitted by the Department of Social Services is not determinative of the arrearage. Thibault v. Thibault, 10 S.M.D. 313 (1996).[2] The evidence is conflicting. The cover sheet implies that public assistance runs back as far as August 1, 1989. Since the older child, Desiree, was born July 26, 1990, the defendant could not possibly be responsible for arrearage to the State prior to that date. In fact, the computer printout detail does not show any payments prior to May 1, 1991. Moreover, the court-found arrearage as of July 31, 1992 is res judicata. The printout indicates assistance paid prior to that date totaling $9,705.00. While the difference of $6,315.00 may be recoverable by the State pursuant to General Statutes § 17b-93[3] as a civil debt[4], it is not includable in the support arrearage.
The evidence shows varying amounts paid to the family[5]
thereafter. In most years, the amount of support ordered exceeded the amount of public assistance paid. For example, in calendar 1997, the $135.00 per week order totals $7,020.00 payable for the year. The State paid $5,548.00 in public assistance. The difference of $1,472.00 when collected is owed to the family. There were also periods of time when the family was not on public assistance including five weeks in mid-1998 and the span since December, 1998. The unpaid support during these periods is owed to the family.
The court has recomputed the arrearage allocation utilizing the same periodic breakdown as utilized by the Support Enforcement Division[6]. The total charges accruing to the State, including the original court found arrearage total $44,172.30. The State has retained $962.60, leaving an arrearage of $43,209.70. During the same time period, the support due to CT Page 697 the plaintiff, consisting of support charges in excess of public assistance paid in each applicable calendar year plus all support accruing when the family was not on public assistance, totals $10,112.70. Support payments passed through to the family during this period totaled $415.16, leaving an arrearage to the plaintiff of $9,697.54.
Accordingly, the court finds that as of October 22, 1999, the arrearages were $43,209.70 to the State and $9,697.54 to the plaintiff.
BY THE COURT
Harris T. Lifshitz Family Support Magistrate