[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The marriage of the parties was dissolved by the court, ThomasSullivan, J., on March 3, 1989. There were two minor children.[1] The judgment provided for child support in the amount of $25.00 per week for each minor child.[2] The basic child support order has never been modified. The older child, Henri, reached majority on August 29, 1999 leaving a $25.00 per week payable order for Sara, the remaining child. There is an additional $20.00 per week payable on the arrearage.
The present issues came to this court pursuant to a joint motion of the defendant and the plaintiff entitled "Motion to Vacate Wage Withholding". The plaintiff and defendant submitted a written stipulation purporting to establish the arrearage as $11,700.00 owed to the plaintiff, to modify the arrearage payment order to $75.00 per week, to establish orders requiring the defendant to maintain medical insurance for the minor child, to equally divide all unreimbursed medical costs, and finally to not only vacate the income withholding order but remove the case from the IV-D system and allow the defendant to make direct payments to the plaintiff.
The parties were provided two hearing regarding the motion and stipulation. At the first of these hearings it became apparent that there were significant discrepancies regarding the amount of the arrearage owed to the plaintiff. The support enforcement division reported an arrearage of $13,734.86 owed to the plaintiff as of March 13, 2002. Yet the court file disclosed an arrearage finding by the court, Langley, F.S.M. of $3,720.36 as of June 10, 1998. Even if the defendant had made no support payments after that date, it would be mathematically impossible for the arrearage to increase to either the stipulated amount or the support enforcement figure based on the existing child support orders The court continued the matter for an audit by support enforcement, a statement of assistance to determine how much temporary family assistance had been paid, to obtain a transcript of the hearing before Family Support CT Page 190 Magistrate Langley, and for the State or either party to file a motion to open that judgment if they believed it to be incorrect.
On the continuance date, the audit and statement of assistance were filed by the State. The transcript was not yet available.[3] No motion to open the 1998 judgment was filed. The court denied the motion to vacate income withholding from the bench.[4] The matter was then continued so that the court could review the audit and obtain the missing transcript, and to again give the State and the parties an opportunity to file a motion to open the judgment.
After a review of the transcripts, the court file, the audit and accompanying payment records, and the statement of assistance it appears likely that the arrearage finding in 1998 was erroneous. However, no motion to open that judgment has yet been filed. Accordingly, the court is bound to consider that finding as the law of the case.
The support enforcement officer suggested that the difference is accounted for by a support assignment of the plaintiffs arrears when she applied for and received public assistance for a brief time in late 1995 to June 1996. The officer suggested that approximately $10,500 was assigned to the State and somehow not reported to the court in 1998. If one adds that sum to the 1998 arrearage finding, the total approximates the arrearage now cited by support' enforcement. The only problem with that theory is that when the plaintiff went on public assistance, the arrearage to her was in the vicinity of $15,500. Furthermore, such an assignment would have far exceeded the total amount the State paid out, which the statement of assistance documents as $4,792.00.
The support arrearage "accruing during the time of actual public assistance is awarded to the State, with all other arrearage accruing to the support recipient. This methodology was utilized by the court in allocating arrearages in Fear v. Fear, 12 S.M.D. 64 (1998); Correa v.Rosa, 10 S.M.D. 73, 76-77 (1996); Carniero v. Brevetti, 10 S.M.D. 65 (1996) (State failed to provide evidence of the amount of AFDC paid);Alicea v. Villafane, 10 S.M.D. 40 (1996) and McCulloch v. McCulloch, 6 S.M.D. 120 (1992)." McBride v. Singleton, 13 S.M.D. 284, 286,2000 Ct. Sup. 693 (1999).
"This is consistent with present Federal statutes and regulations. In 1996, the Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA), P.L. 104-193 and the Balanced Budget Act of 1997, P.L. 105-33
revised the Social Security Act to provide that ultimately support arrearages pursuant to an assignment of support are to be allocated and distributed in this manner. 42 U.S.C. § 408 (a) (3); 42 U.S.C. § 457 CT Page 191 (a) (6). See also 45 C.F.R. § 302.32 (f) (ii); 45 C.F.R. § 302.51
(a) (1). Section 17-578(b)-2 (b) of the Regulations of Connecticut State Agencies provides that on discontinuance of public assistance "current support payments shall be distributed to the custodial relative of record on the date of discontinuance, for the benefit of the children named in the child support order."[5] Jackson v. Artis, 16 S.M.D. ___,2002 Ct. Sup. 5223, 8 Conn.Ops. 593 (2002); Busanet v.Plantier, 13 S.M.D. 290, 295 (1999); McBride v. Singleton, supra, 13 S.M.D. 286.
It is clear from the records that the State of Connecticut has been paid in full, and in fact overpaid. Support enforcement's audit correctly computes that the total of support payments due to the State during the 32 weeks during which the children were on public assistance totals only $1,600.00. The State actually retained $2,337.00 collected child support, thereby overpaying itself by some $737.00. Additionally, the State received $2,716.39 from attorneys representing the plaintiff from proceeds recovered for her in a third party action. In this regard, the State may recover the total family assistance amount as a civil debt[6], pursuant to General Statutes § 17b-93.[7] The statement of assistance shows all cash public assistance paid to the plaintiffs family unit. It is not determinative of the arrearage. Adams v. Allen, 15 S.M.D. ___ (2001);Thibault v. Thibault, 10 S.M.D. 313 (1996).[8]
"The present arrearage can be computed by simply adding all charges under the operative support order, and subtracting all proper payments and credits." Gatter v. Gatter, 15 S.M.D. ___2001 Ct. Sup. 1830-av (2001); Giordano v. Giordano, 14 S.M.D. ___ (2000);Filiatrault v. Becotte, 12 S.M.D. 154, 156 (1998); Lynk v. Lynk, 11 S.M.D. 233, 242 (1997); Thibault v. Thibault, 10 S.M.D. 313, 317 (1996);Alicea v. Villafane, 10 S.M.D. 40, 42 (1996); Landon v. Landon, 8 S.M.D. 200, 202 (1994).
In the absence of a motion to open the judgment the court must base its arrearage computation on the 1998 judgment which set the arrearage at $3,720.36 to the plaintiff and zero to the State as of June 10, 1998. The Support Enforcement Division's audit shows additional charges under the order to total $6,650.00 to the date of the audit, May 1, 2002. Adding that sum to the court-found arrears yields a total of $10,370.36. Against this amount the audit indicates payments of $11,499.55 by the defendant from June 10, 1998 through May 1, 2002. Accordingly, the defendant had no arrearage to the plaintiff or the State of Connecticut as of May 1, 2002.
BY THE COURT CT Page 192
 ___________________ Harris T. Lifshitz Family Support Magistrate